**SPANEXICO, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 76–8.**

United States Court of Customs and Patent Appeals.

Oct. 21, 1976.

Edward N. Glad, Glad, Tuttle & White, Los Angeles, Cal., attorney of record, for appellant.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Chief, Customs Section, Velta A. Melnbrencis, New York City, attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 405 F.Supp. 1078, 75 Cust.Ct. 123, C.D.4616 (1975), sustaining the Government's appraisement of certain "furniture and parts of iron or wood and other household and illuminating articles." The merchandise was manufactured

by Gavaldon, S.A. (herein "Gavaldon") of Tijuana, Mexico, and was imported during the period April through November 1970. Appraisement was made on the basis of export value. We affirm.

### Statutory Provisions

The pertinent statutory provisions are found in section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (70 Stat. 943):

SEC. 402. VALUE

\* \* \* \* \* \*

(b) *Export Value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \*

(f) *Definitions.*—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

### Proceedings Below

The Customs Court noted that the parties agreed that export value was the proper basis for appraisement, but found that the Government's appraisement was erroneous. Nevertheless, the court sustained the appraisement [1] because appellant had "failed to prove that its claimed values, i. e., the invoice prices, represent the proper dutiable values of the importations in question." More particularly, the Customs Court found that appellant, being the exclusive customer of Gavaldon, was thus a "selected purchaser" within the meaning of section 402(f)(1)(B), supra, and had the burden "to establish (1) that the sales to it were in the ordinary course of trade and (2) that its claimed values fairly reflected the market value of the merchandise." The court concluded that appellant had failed to establish either. Referring to the first of the two above requirements, the Customs Court stated that "there is no evidence whatever about the conditions and practices existing in the trade" and that, as between appellant and Gavaldon, "the record presents merely an outline of a rather unusual rela-

1. The Customs Court actually affirmed the appraised values "with the exceptions (1) that the correct dutiable value for style 104 in entry 103137 is $36.00 each; and (2) that the correct dutiable value for style 5001 in entry 106032 is $4.25 each." The reason for making these exceptions was that "the government appraising officer conceded that as to these two entries he had erred in appraising the above listed style numbers and that the correct appraised values for such styles are those set out above."

tionship." The evidence of this "unusual relationship" showed the following facts. After appellant's previous supplier had gone out of business, appellant's president requested a social friend (Sergio Gavaldon), who had never been in the furniture business, to set up Gavaldon in Tijuana. Appellant advanced Gavaldon $146,892.20 "without any interest and apparently without any guarantee that the money would not be used to manufacture furniture for sale to others." Although purchase orders from appellant to Gavaldon totaled "some $118,-000" from April through October 1970, only $80,600 of the advance had been repaid. Indeed, the evidence showed that the balance was never paid, but was compromised by a payment of $8,000. As the Customs Court also pointed out, a signature card was filed in April 1970 with a San Diego bank identifying appellant's secretary-treasurer as the bookkeeper for Gavaldon, and authorizing her to draw checks on its accounts at that bank. She drew checks on those accounts and on an account of Gavaldon at another bank and reconciled those accounts, all without compensation from Gavaldon.

As to the second of the two above requirements, the Customs Court stated:

> Considering (i) that the relationship of the parties has not been fully explained; (ii) that an arms length transaction has not been shown; and (iii) that there is no probative evidence as to sales and purchases by others of such or similar merchandise, there can be no basis for concluding that Gavaldon, S.A.'s invoice prices to Spanexico fairly reflected the market value of the merchandise.

### Appellant's Argument

Appellant argues that the Customs Court erred in not finding that sales to it by Gavaldon were in the ordinary course of trade, stating that "The only question under this point is whether the sellers in the ordinary course of trade in the trade under consideration sell to selected wholesalers or to all who care to buy." Appellant defines the "trade under consideration" as "Mexican furniture manufacturers who exported to the United States and who happened to be located in Tijuana," and argues that "All of the evidence" shows that these manufacturers "sold their merchandise to one selected wholesaler." Appellant would allay the Customs Court's concern about its advance to Gavaldon by stating that "the unrebutted testimony shows that it was customary for furniture manufacturers in Mexico to request advances on orders from importers."

Appellant also faults the Customs Court for not finding the invoice prices as claimed by appellant to be a fair reflection of the market value of the imported merchandise. Appellant states that "unrebutted testimony" establishes that appellant and Gavaldon were "independently financed, operated and controlled enterprises dealing at arms length," and that "the *specific* prices for sales between the exporter and appellant were negotiated and were based on market conditions when applicable." According to appellant, the evidence shows that the uncompensated services performed for Gavaldon by appellant's secretary-treasurer were "ministerial" and performed "upon the *direction* of Gavaldon, S.A." Criticizing the Customs Court for even requiring evidence of prices in "other kinds of transactions," appellant states that the court was in error "in thereafter giving no weight to appellant's evidence which established the specific prices of competitive similar merchandise in Plaintiff's Collective Exhibit 10."

### OPINION

■ We agree with the decision of the Customs Court. Appellant does not deny that, as a selected purchaser of Gavaldon, it was obliged to show that the price it paid for the imported merchandise fairly reflected market value. In deciding whether such a showing has been made, we consider whether the sales were at arm's length and the evidence showing the relationship between appellant and Gavaldon. Appellant does not deny that it made an unrestricted, interest-free advance to Gavaldon. Appellant's assertion, by way of explanation, that it was customary for Mexican furniture

manufacturers to require an advance on orders from importers, is inconsistent with the evidence showing that the amount of the advance eventually repaid was less than the value of appellant's purchase orders, suggesting that the advance and sales were separate transactions. The lack of a satisfactory explanation for the advance raises doubt as to the independence of appellant and Gavaldon. The doubt is further compounded by uncontradicted testimony that an officer of appellant wrote checks for Gavaldon and reconciled its accounts, all without compensation from that firm. Appellant's insistence that the services afforded were ministerial, and performed only upon the direction of Gavaldon, does not explain, as the Customs Court pointed out, why Gavaldon, a Mexican manufacturer, would want its sole American purchaser to know how its funds were spent. These circumstances and others fully justified the Customs Court in requiring evidence as to sales and purchases by others of such or similar merchandise. But there was no such evidence. Appellant is mistaken in its contention that its Plaintiff's Collective Exhibit 10 is sufficient in this regard. That exhibit consists of entry papers and invoices from another importer. They describe the merchandise to which they pertain in only a cursory manner, and appellant has pointed to nothing in the record which would show that the articles covered by these documents were identical or similar to the merchandise at bar.

Since we affirm the Customs Court with respect to appellant's failure to establish that its claimed invoice prices fairly reflected the market value of the imported merchandise, we need not consider whether appellant's purchases were in the ordinary course of trade.

### Taxation of Costs

Appellant has moved, pursuant to Rule 5.6(c) of this court, to impose the cost of printing the testimony of James Wait on pages 89 through 95 of the transcript. It does appear, as appellant states, that this testimony was designated by appellee "solely for the testimony that appears on page 95 of said Transcript," the remaining testimony being merely preparatory. Since the trial judge ruled that the testimony on page 95 be stricken from the record, none of that testimony was necessary or even available for our consideration of this appeal. Appellee, therefore, shall pay the cost of printing the testimony of James Wait appearing on pages 89 through 95 of the transcript.

The judgment of the Customs Court is *affirmed.*